## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MICHAEL DADEY,

      Plaintiff,

    v.                                       No. CV 14-949 LH/CG

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on Plaintiff Michael Dadey's *Motion to Reverse and Remand for a Rehearing with Supportive Memorandum* (the "Motion"), filed on June 2, 2015, (Doc. 18); Defendant's *Brief in Response to Plaintiff's Motion to Reverse and Remand* ("Response"), filed on August 28, 2015, (Doc. 22); and Mr. Dadey's *Reply in Support of Plaintiff's Motion to Reverse and Remand for a Rehearing with Supportive Memorandum* ("Reply"), filed on September 17, 2015, (Doc. 23). United States District Judge C. LeRoy Hansen referred the case to this Court to make proposed findings and a recommended disposition on October 23, 2014. (Doc. 5).

On September 8, 2010, Mr. Dadey filed an application for disability insurance benefits and supplemental security income, alleging disability beginning on January 1, 2010. (Administrative Record ("AR") 17, 172–78). His applications were initially denied on December 14, 2010, (AR 72–79), and also upon reconsideration on October 4, 2011. (AR 80–87). Mr. Dadey filed a written request for a hearing on November 17, 2011, (AR 88–89); a hearing was held before Administrative Law Judge ("ALJ") John J. Porter on

December 10, 2012. (AR 37–58). Mr. Dadey, who was represented by counsel, and

Fred A. Monaco, an impartial vocational expert, testified at the hearing. (*Id.*). On

February 12, 2013, the ALJ denied Mr. Dadey's application for benefits, finding that Mr.

Dadey was not disabled under 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 17–36).

Mr. Dadey subsequently filed a timely application for review with the Appeals Council.

(AR 7–10). The Appeals Council summarily denied Mr. Dadey's request for review of

the ALJ's decision, making it the final decision of the Commissioner of the Social

Security Administration (the "Commissioner") for purposes of this appeal. (AR 1–6).

Mr. Dadey complains that the ALJ committed reversible, legal error by: (i) failing

to provide sufficiently specific reasons for improperly rejecting medical opinions from

acceptable sources in the record; (ii) rendering an improper residual functional capacity

("RFC") finding; and (iii) failing to clarify with specificity which jobs within the Dictionary

of Occupational Titles that Mr. Dadey was qualified to perform. (Doc. 18 at 10). Mr.

Dadey also requests that the Court reverse the Commissioner's decision and remand

the case for reconsideration before a different ALJ. (*Id.* at 23).

The Court has reviewed the Motion, the Response, the Reply, and the relevant

law.  Additionally, the Court has meticulously reviewed and considered the entire

administrative record. Because the ALJ failed to properly explain his reasons for

rejecting a significantly probative portion of one of the medical opinions in the record,

the Court recommends that the Motion be **GRANTED in part** and that this case be

**REMANDED** to the Commissioner for further proceedings. The Court also recommends

that Mr. Dadey's request that this case be assigned to a different ALJ upon remand be

denied.

## I.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v.*

*Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.  Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits (DIB) and supplemental security income (SSI), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; that (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, he will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

4

claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

### III. Background

Mr. Dadey initially applied for benefits alleging that his colostomy bag, hernia, and high blood pressure prevented him from working. (AR 203).

At step one, the ALJ determined that Mr. Dadey had not engaged in substantial gainful activity since January 1, 2010. (AR 19). At step two, the ALJ concluded that Mr. Dadey was severely impaired with the following: (i) low back pain; (ii) plantar fasciitis; (iii) hypertension; (iv) coronary artery disease with status post open heart surgeries; (v) obstructive sleep apnea; (vi) benign prostate hypertrophy; (vii) history of perforated diverticulitis with colostomy surgery; (viii) inguinal hernia; (ix) morbid obesity; (x) mood disorder; (xi) personality disorder; (xii) bereavement; (xiii) alcohol dependence; and (xiv) cannabis use. (AR 19–20). At step three, the ALJ found that none of Mr. Dadey's impairments, solely or in combination, equaled one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (AR 20–23).

The ALJ proceeded to step four, and first determined Mr. Dadey's RFC. (AR 23–29). He considered Mr. Dadey's subjective complaints and the objective medical evidence in the record, and concluded that his testimony was not fully credible. (*Id.*). The ALJ found that Mr. Dadey could perform a restricted range of light work, as that term is defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he must be provided an option to alternate positions between sitting and standing every 30 minutes and can perform only occasional postural activities. (AR 23). The ALJ also found that Mr. Dadey was limited to work requiring only: (i) simple, routine, and repetitive tasks that

do not involve fast-paced production requirements, and (ii) simple, work-related decisions. (*Id.*).

Next, the ALJ concluded that Mr. Dadey was not capable of doing any of his past relevant work. (AR 28–29). At step five, the ALJ determined whether Mr. Dadey would be able to perform any other work existing in significant numbers in the national economy. (AR 29). The ALJ found that Mr. Dadey was 49 years old on the alleged disability onset date and therefore categorized as an "individual closely approaching advanced age," with a high school education, and English-language skills. (*Id.*).

The vocational expert testified at the hearing that an individual with Mr. Dadey's same age, education, work experience, and RFC could perform the jobs of solderer/cutter, abrasive and extruding machine operator, and tester/sorter/weigher. (AR 51–52). The vocational expert testified that those jobs existed in significant numbers in the national economy. (*Id.*). After finding that the vocational expert's testimony to be consistent with the Dictionary of Occupational Titles, the ALJ adopted his testimony. (AR 29).

The ALJ then concluded that because Mr. Dadey was capable of performing work existing in significant numbers in the national economy, he was not disabled. (AR 30).

## IV. Analysis

The ALJ determined that Mr. Dadey had the RFC to perform a restricted range of light work. Mr. Dadey contends that the ALJ's failure to include additional limitations due to his numerous and severe mental impairments was legal error, because he did not provide any reasons for discounting portions of Elizabeth Chiang, M.D.'s and Louis

6

Wynne, Ph.D.'s medical opinions. He further argues that the RFC is erroneous because the ALJ did not adequately describe his ability to perform sustained work activities pursuant to a function-by-function analysis. Last, Mr. Dadey complains that the ALJ did not make sufficiently specific findings as to which of the jobs that he can perform exist in significant numbers in the national economy.

The Commissioner responds that the ALJ properly weighed and accounted for Dr. Chiang's and Dr. Wynne's medical opinions in making the RFC finding. The Commissioner also maintains that the ALJ conducted a function-by-function assessment of Mr. Dadey's RFC, and that the ALJ made the appropriate findings at step five of the sequential evaluation process. The Commissioner argues that the ALJ's decision should be affirmed because he applied the proper legal standards and that substantial evidence supports his findings.

### A.   *Dr. Chiang's Mental RFC Assessment*

Mr. Dadey challenges the ALJ's consideration of Dr. Chiang's medical opinion. He argues that the ALJ erred by not properly explaining why he rejected portions of Dr. Chiang's medical opinion which support a more restrictive Mental RFC finding.

Dr. Chiang is a non-examining State agency psychiatrist who completed a Mental RFC Assessment ("MRFCA") of Mr. Dadey on December 13, 2010. (AR 394–97). In Section I of the MRFCA, Dr. Chiang found moderate limitations in the following functioning areas: (i) ability to understand and remember detailed instructions; (ii) ability to carry out detailed instructions; (iii) ability to work in coordination with or proximity to others without being distracted by them; (iv) ability to interact appropriately with the general public; and (v) ability to accept instructions and respond appropriately to

criticism from supervisors. (AR 394–95). In Section III of the MRFCA, she explained that

Mr. Dadey can interact adequately with co-workers and supervisors and respond

appropriately to changes in a work setting, but that he requires a work environment with

limited interactions with the general public. (AR 396).

The Regulations require the ALJ to evaluate every medical opinion in the record.

*See* 20 C.F.R. §§ 404.1527(c), 416.927(c). A medical opinion is a statement from a

physician, psychologist, or other acceptable medical source that reflects judgments

about the nature and severity of the claimant's impairment(s), including their symptoms,

diagnosis and prognosis, what the claimant can still do despite the impairment(s), and

physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The level of

deference a non-treating physician's opinion receives must be determined using the

following six factors:

> (1) the length of the treatment relationship and the frequency of
> examination; (2) the nature and extent of the treatment relationship,
> including the treatment provided and the kind of examination or testing
> performed; (3) the degree to which the physician's opinion is supported by
> relevant evidence; (4) consistency between the opinion and the record as
> a whole; (5) whether or not the physician is a specialist in the area upon
> which an opinion is rendered; and (6) other factors brought to the ALJ's
> attention which tend to support or contradict the opinion.

*Goatcher v. U.S. Dept. Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995)

(citing 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6)). The ALJ must give good

reasons—reasons that are "sufficiently specific to [be] clear to any subsequent

reviewers"—for the weight that he ultimately assigns to the opinion. *See Langley*, 373

F.3d at 1119 (citations omitted).

In his decision, the ALJ noted that Dr. Chiang had reviewed Mr. Dadey's file and

opined that his mental impairments cause no more than moderate limitations in the

areas of social functioning and concentration, persistence, and pace. (AR 21–22, 27). The ALJ further observed that Dr. Chiang indicated that Mr. Dadey could follow detailed, but not complex, instructions, make decisions, interact adequately with others, and respond appropriately to workplace changes. (AR 27). The ALJ concluded that because these findings were consistent with Mr. Dadey's "limited mental health treatment" and his self-reports of various daily activities, great weight would be afforded to Dr. Chiang's opinions and report. (*Id.*). Thus, the ALJ concluded that Mr. Dadey was limited to simple, routine, and repetitive tasks performed in an environment that does not require more than simple decisions or fast-paced production. (*Id.*).

Mr. Dadey contends that the ALJ implicitly and improperly rejected certain portions of Dr. Chiang's opinion because he failed to incorporate them into the RFC despite granting Dr. Chiang's entire opinion great weight. Mr. Dadey reasons that if the ALJ had found him to be limited in his ability to interact with the general public, that the ultimate finding as to disability would be affected. A substantial loss of ability to respond appropriately to usual work situations may justify a finding of disability. *See* Social Security Rulings ("SSR") 85-15, 1985 WL 56857, at *4, 5 (Jan. 1, 1985) ("a substantial loss of ability to meet . . . basic work-related activities would . . . justify a finding of disability"). Thus, Mr. Dadey contends that the ALJ committed reversible legal error by failing to provide sufficiently specific reasons supported by substantial evidence for rejecting some portions of Dr. Chiang's opinion, while adopting other portions.

The Commissioner responds that the ALJ reasonably assessed Dr. Chiang's opinion in accordance with the Regulations, and adopted them into the RFC accordingly. (Doc. 22 at 7–8). Specifically, she argues that the ALJ was not required to

9

adopt wholesale Dr. Chiang's "summary conclusions" from Section I of the MFRCA, because Section III of the MRFCA is the portion of the MRFCA where Dr. Chiang recorded her ultimate opinion of functioning in a "useful narrative format." (*Id.* at 7).

The Tenth Circuit recently addressed this very issue in an unpublished decision. *See Carver v. Colvin*, No. 14-5056, 600 Fed. Appx. 616 (10th Cir. Jan. 20, 2015) (unpublished). In that case, the claimant argued that the ALJ failed to incorporate all of the limitations assessed pursuant to a non-examining, State Agency's MRFCA, because the Section I limitations were left out of the RFC but the Section III limitations were included verbatim. The Tenth Circuit explained that the MRFCA's Section I "is for recording summary conclusions derived from the evidence in the file and directs that detailed explanation of the degree of limitation for each category is to be recorded in Section III." *Id.* at 618 (quotations and alterations omitted). That language is consistent with the provisions of the Social Security Administration's Program Operations Manual Systems ("POMS"), which "provides that Section III of the MRFCA, not Section I, is for recording a medical consultant's formal mental RFC assessment, and that adjudicators are to use the Section III narrative as the RFC assessment." *Id.* at 618–19 (discussing POMS DI 25020.010 B.1., POMS DI 24510.060 B.4.a., and POMS DI 24510.065 A.). However, the Tenth Circuit explained that the degree and extent of the capacity or limitation ascribed in Section I must be reflected in narrative format in Section III. *Id.* at 619 (citing POMS DI 24510.063 B.2.).

Further, the *Carver* Court explained that "[t]he POMS also provides that the discussion of all mental capacities and limitations in Section III must be in narrative format, and that Section III is for explaining the conclusions indicated in [S]ection I, in

10

terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Carver*, 600 Fed. Appx. at 619 (quotations omitted). The Tenth Circuit observed that if a consultant's "Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Id.* (citing *Gorringe v. Astrue,* 898 F. Supp. 2d 1220, 1224–25 (D. Colo. 2012), and *Baysinger v. Astrue,* No. 11-cv-00333–WYD, 2012 WL 1044746, at \*5–6 (D. Colo. Mar. 28, 2012) (unpublished)).

In applying these principles, the Tenth Circuit found that the consultant's Section III narrative "adequately encapsulated" his Section I finding that the claimant had a moderate limitation in being able to accept instructions and respond appropriately to supervisor criticism. *Carver*, 600 Fed. Appx. at 619. In Section III, the consultant opined that the claimant could "relate to supervisors and peers on a superficial work basis" and in a work scenario involving only "simple tasks with routine supervision." *Id.* The Court determined that these statements adequately explained the effects of a moderate limitation in the claimant's ability to accept instructions and respond appropriately to supervisor criticism, because "the ALJ sufficiently captured the essence of the Section III functional limitations by stating that Carver could understand, remember, and carry out simple instructions in a work-related setting and could interact with co-workers and supervisors, under routine supervision." *Id.* at 619–20. The Tenth Circuit reasoned that interacting with supervisors in the course of routine supervision over simple work was

"tantamount" to the "superficial" interaction encountered in such jobs, and refused to "parse the ALJ's language too finely." *Id.* at 620.

In this case, in Section I of her MRFCA, Dr. Chiang found that Mr. Dadey had moderate limitations in his ability to interact appropriately with the general public. (AR 395). In Section III, Dr. Chiang explained that Mr. Dadey may require a work environment with limited interactions with the public. (AR 396). Thus, Dr. Chiang's statement in Section III that Mr. Dadey can only have limited interactions with the public sufficiently describes the moderate limitation she described in that functioning area in Section I of the MRFCA.

Dr. Chiang also assigned Mr. Dadey with moderate limitations in the area of social functioning. However, the ALJ did not assess Mr. Dadey with any limitation in his ability to interact with the public at work, even though the ALJ purported to adopt Dr. Chiang's entire medical opinion into the RFC finding. The Tenth Circuit has held that an ALJ's failure to formulate an RFC that considers even moderate limitations identified in a non-examining consulting physician's MRFCA to be reversible error. *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007). "A moderate impairment is not the same as no impairment at all." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). A medical opinion that a claimant has a moderate limitations in an area of functioning "supports the conclusion that the individual's capacity to perform the activity is impaired." *Jaramillo v. Colvin*, No. 13-2194, 576 Fed. Appx. 870, 875 (10th Cir. Aug. 27, 2014) (unpublished) (quoting POMS DI 24510.063 B.2, Soc. Sec. Admin. (Oct. 14, 2010) https://secure.ssa.gov/poms.nsf/lnx/0424510063)). Thus, Dr. Chiang's assessment that

Mr. Dadey has limitation in his ability to interact with the public in a work-place setting is significantly probative to the final determination of disability.

In accordance with the Regulations, the ALJ was required to explain why he implicitly rejected Dr. Chiang's opinion as to social functioning by not incorporating it into his RFC finding. The Commissioner contends that the ALJ implicitly rejected that portion of Dr. Chiang's opinion for the same reasons that he rejected Dr. Wynne's opinion that Mr. Dadey could not interact well with the general public. (Doc. 22 at 7–8). To be sure, the Court will turn to the ALJ's analysis of Dr. Wynne's opinions.

Dr. Wynne is an examining, State agency psychologist. The ALJ found that Dr. Wynne's findings were "generally consistent" with the other evidence in the record and afforded them "some weight." (AR 27). He concluded that Dr. Wynne's opinion that Mr. Dadey could perform simple work and adapt to changes to be consistent with both the treatment notes in the record and the results of Dr. Wynne's examination, and therefore afforded those opinions "great weight," incorporating them into the RFC. (*Id.*). However, the ALJ found that Dr. Wynne's opinion that Mr. Dadey would have trouble interacting with others to be unsupported by the "totality of the evidence," including Mr. Dadey's self-report that he is able to shop, attend car shows, go to a local club, and utilize public transportation. (AR 27, 255–62). Thus, the ALJ afforded that portion of Dr. Wynne's opinion concerning Mr. Dadey's social functioning "little weight," and did not incorporate it into the RFC. (AR 27).

Although the Commissioner does not make this argument in her Response, at step three of the sequential evaluation process the ALJ refused to assess moderate limitations in the area of social functioning as Dr. Chiang ascribed, because of Mr.

Dadey's self-reported daily activities and the "totality of the evidence." (AR 21–22).

However, as Mr. Dadey aptly points out, the ALJ did not state he was rejecting any

portion of Dr. Chiang's opinion, and his only statement on the matter was that he

granted her report and opinions "great weight." (Doc. 23 at 5–6). The Court must

evaluate an ALJ's decision based solely on the reasons stated in the decision, and it is

impermissible for the Court to engage in post hoc rationalization. *Robinson v. Barnhart*,

366 F.3d 1078, 1084–85 (10th Cir. 2004). Therefore, the Court will not consider the

additional reasons supplied by the Commissioner in evaluating the ALJ's decision to

implicitly discount a portion of Dr. Chiang's MRFCA.

Therefore, the Court concludes that the RFC did not accurately reflect all of the

mental functioning limitations that were ascribed by Dr. Chiang. Dr. Chiang's opinion

regarding Mr. Dadey's social functioning was significantly probative, and even bolstered

by the opinion of Dr. Wynne. The ALJ failed to give any reasons for implicitly

discounting that portion of Dr. Chiang's opinion, and therefore the Court must remand

this case to allow the ALJ to explain his treatment of the mental RFC evidence.

B.     *Request for a Rehearing with a New Administrative Law Judge*

Plaintiff requests that the Court remand the final decision of the Commissioner

for a rehearing with a new administrative law judge, but provides the Court with no

reasons why it should do so. (Doc. 18 at 23). In this district, the Court has ordered the

Commissioner to consider assigning a matter to a different ALJ upon remand to "take a

fresh look at the matter." *Rivera v. Astrue*, 1:10-cv-00863-KBM (D.N.M.) (Doc. 30)

(citing *Sutherland v. Barnhart*, 322 F.Supp.2d 282, 293 (E.D.N.Y. 2004), for the

proposition that a new ALJ may be assigned where the original did not consider the

entire record or provide good reasons for the weight he assigned to the treating physician's opinion). Other courts have remanded a matter to a new ALJ because of the former ALJ's offensive conduct, *Ventura v. Shalala*, 55 F.3d 900, 904 (3d Cir. 1995), and bias, *Miles v. Chater,* 84 F.3d 1397, 1401 (11th Cir.1996).

The Court cannot find that the ALJ failed to consider the entire record, that he acted impartially, or that he compromised the process of administrative review. Further, Mr. Dadey provides the Court with no argument why it should order a new ALJ upon remand. The Court will therefore deny Mr. Dadey's request for a different ALJ.

## V.  Recommendation

The Court holds that the ALJ committed reversible legal error by failing to state his reasons for implicitly rejecting a medical opinion that was significantly probative of Mr. Dadey's mental functioning abilities. The omission constitutes substantial legal error necessitating a remand for further proceedings consistent with the discussion herein. The Court does not decide any other issue raised by Mr. Dadey on appeal, as these matters would be mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE RECOMMENDED** that Mr. Dadey's *Motion to Reverse and Remand for a Rehearing with Supportive Memorandum* (Doc. 18) be **GRANTED in part** and that this case be **REMANDED** to the Commissioner for further proceedings consistent with this Court's Proposed Findings and Recommended Disposition.

**IT IS FURTHER RECOMMENDED** that the Motion is **DENIED in part** because the Court should not order that a different administrative law judge be assigned upon remand.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE